**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest FAIRCHILD,
Defendant-Appellant.**

**No. 75–1283.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1975.

Decided Nov. 25, 1975.

Rehearing Denied Dec. 23, 1975.

Certiorari Denied April 19, 1976.
See 96 S.Ct. 1682.

186

Julius L. Sherwin, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U.S. Atty., Robert L. Herbst, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and STEVENS, Circuit Judges, and KUNZIG, Judge.*

STEVENS, Circuit Judge.

Appellant contends that his conviction for distributing counterfeit bills[1] should be reversed because (1) the delay of 27 months between his arrest and trial violated his right to a speedy trial; and (2)

---

* Honorable Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. Defendant was found guilty of (1) selling 70 counterfeit $10 Federal Reserve notes in viola-tion of 18 U.S.C. § 473, and (2) passing an additional counterfeit $10 Federal Reserve note (on a different date), in violation of 18 U.S.C. § 472.

evidence seized during a search incident to a warrantless arrest should have been suppressed because the arresting officers had ample time to obtain a warrant. He also questions the sufficiency of the evidence and the admissibility of the testimony of the witness Lee.

## I.

■ The defendant was arrested on November 24, 1972, the indictment was returned on July 25, 1974, and his trial began on February 24, 1975. This delay of 27 months is long enough to require consideration of the other factors identified in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[2]

■ The government's explanation for the delay of 20 months between arrest and indictment was that it was attempting to find others who were involved in the counterfeiting operation in order to try them with Fairchild. The Government also explained that before proceeding against Fairchild it wanted to complete the trial of an important witness whose testimony might have been unavailable had he been tried with Fairchild. These reasons are sufficient to foreclose any claim that the pre-indictment delay was designed by the Government to prejudice Fairchild's defense. *See United States v. Ricketson,* 498 F.2d 367, 371 (7th Cir. 1974).

■ Neither of the two remaining factors—the defendant's assertion of his right and possible prejudice caused by the delay—lends any support to defendant's claim. He has made no showing of actual prejudice to his defense, other than a vague allegation that his memory was impaired. And defendant made little effort to have his case tried sooner. Although at some point after the indictment (the record is not clear as to the exact date) a speedy trial motion was filed, this motion was later withdrawn by defendant's counsel who said there was "nothing urgent" about the case. Thus, the defendant simply has not shown enough prejudice to tip the *Barker v. Wingo* balance. Compare *United States v. De Tienne,* 468 F.2d 151 (7th Cir. 1972), *cert. denied* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (no actual prejudice), with *United States v. Macino,* 486 F.2d 750 (7th Cir. 1973) (one witness died and memories were *demonstrably* impaired).[3]

## II.

■ Defendant's second asserted ground for reversal is the district court's denial of his motion to suppress evidence which was found in a search of his car at the time of his arrest. Defendant does not question the fact that the search was proper if the arrest was valid; nor does he challenge the existence of probable cause to arrest him. Rather, he contends that since the agents were in possession of ample information to justify the issuance of a warrant at least three days earlier and failed to offer any valid reason for not obtaining a warrant, the warrantless arrest was a violation of his rights under the Fourth Amendment.[4]

---

2. In his opinion in *United States v. Lockett,* 526 F.2d 1110, released today, Judge Kunzig identifies the relevant factors to be balanced: "(1) length of delay, (2) reason for delay, (3) assertion of the right, and (4) prejudice to defendant."

3. The fact that most of the delay occurred prior to the indictment may explain the absence of a prompt demand for trial, *see United States v. Lockett, supra,* at p. 187, but does not demonstrate that appellant's defense was prejudiced; he knew that he had been arrested on a counterfeiting charge.

4. Defendant was arrested by agents of the United States Secret Service, who by 18 U.S.C. § 3056 are "authorized to make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." The Government agents had probable cause to arrest the defendants by, at the latest, November 21, 1972, but did not arrest him until November 24, 1972. Although investigation continued during this period, the agents knew *no* more about Fairchild at the time of his arrest than they did three days earlier. Thus, they had ample time in which to obtain a warrant.

In the absence of "a few specifically established and well delineated exceptions," a warrantless search is a violation of the Fourth Amendment even when based on probable cause. *See Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564. The question squarely raised by this appeal is whether warrantless arrests should likewise be treated as presumptively invalid. Prior to the decision by the Ninth Circuit in *United States v. Watson,* 504 F.2d 849 (1974), *cert. granted* 420 U.S. 924, 95 S.Ct. 1117, 43 L.Ed.2d 392 (1975), this question had been consistently answered in the negative.[5] Presumably it will be answered definitively by the Supreme Court in the *Watson* case since the Court has granted certiorari.

, We have not previously been required to decide this precise question, although we have twice noted our opinion that no warrant is required when there is probable cause to arrest. *See United States v. Rosselli,* 506 F.2d 627, 629 n. 4 (1974); *United States v. Cantu,* 519 F.2d 494 at 496 n. 5 (1975). In these circumstances it seems appropriate for us to leave to the Supreme Court the question whether a well settled rule of constitutional law should now be changed.[6]

### III.

■ Defendant argues that the evidence is insufficient to support the conviction because the testimony of the principal witness, one South, is patently incredible. The asserted incredibility stems from the fact that South testified that he purchased notes from the defendant at a price of $40 per 100 and resold them at a lower price. The record, however, contains an explanation of this testimony which the jury was entitled to credit. South's testimony indicates that he had not previously passed any counterfeit bills and made the decision to sell them at a loss because he was afraid to try to pass them. Although defendant makes a number of other arguments questioning the credibility of South's testimony, we are satisfied that the jury was entitled to believe the incriminating evidence.

### IV.

Finally, defendant argues that the testimony of the witness Lee should have been excluded because it was irrelevant and grossly inflammatory. Lee testified that, on a date shortly after the events charged in the indictment, Fairchild showed Lee a large quantity of bills in the trunk of his car, told Lee they were counterfeit, and offered to let Lee sell them.

■ Evidence of other criminal transactions is, of course, not admissible to show that the defendant has a "propensity" to commit the charged offense. *United States v. Yarbrough,* 352 F.2d 491 (6th Cir. 1965). Such evidence may,

---

**5.** *Ford v. United States,* 122 U.S.App.D.C. 259, 352 F.2d 927 (1965) (*en banc*); *United States v. Hall,* 348 F.2d 837 (2d Cir. 1965); *United States v. Miles,* 468 F.2d 482 (3rd Cir. 1972); *United States v. Morris,* 477 F.2d 657 (5th Cir. 1973); *United States v. Fachini,* 466 F.2d 53 (6th Cir. 1972); *United States v. Bazinet,* 462 F.2d 982 (8th Cir. 1972).

**6.** The principal arguments in favor of imposing the same warrant requirement for arrests as for searches are (1) that the language of the Fourth Amendment does not differentiate between searches and arrests; (2) that an arrest, even in a public place, may be at least as offensive to the citizen as a search of his home, and therefore comparable reasons of policy would support a rule requiring the prior assessment of probable cause by a neutral and detached magistrate; and (3) that such a rule would preclude the possibility that the police

might arrange the time and place of an arrest to justify searches for which no warrant could be obtained. The principal arguments to the contrary are (1) that the existing rule is supported by the common law setting in which the Fourth Amendment was drafted, see *United States v. Hall,* 348 F.2d 837, 841 (2d Cir. 1965); (2) an exclusionary rule requiring arrest warrants in all cases, absent special circumstances, would have no deterrent effect unless the police were in fact seeking evidence, since an illegal arrest does not confer immunity on the arrestee; (3) the introduction of an additional procedural requirement in the administration of our system of criminal justice would impose some additional cost on an already overburdened system; and (4) the existence of a viable common law remedy for false arrest, as well as a federal remedy under 42 U.S.C. § 1983, may already provide an adequate deterrent to irresponsible arrests.

however, be admissible if, entirely apart from the matter of "propensity," it has a tendency to make the existence of an element of the crime charged more probable than it would be without such evidence. See Rules 401 and 404(b) of the Fed. Rules of Evidence; *United States v. McCoy,* 517 F.2d 41, 43–44 (7th Cir. 1975); *United States v. Rivera,* 437 F.2d 879 (7th Cir. 1971), *cert. denied,* 402 U.S. 947, 91 S.Ct. 1638, 29 L.Ed.2d 115. Lee's testimony in this case was relevant to an element of each count. The fact that Fairchild was in possession of a supply of counterfeit bills tended to prove that he had the ability to distribute the notes described in both counts and, further, that the passing of the single note described in Count II was not a mere accident or mistake.

Even though relevant, the evidence could have been excluded had the trial court found that its prejudicial effect outweighed its probative value. Fed. Rule of Evidence 403. However, such balancing is in the first instance left to the sound discretion of the trial judge, and there is no ground to say that he abused that discretion in this case.

Affirmed.