John TERRY, Petitioner-Appellant,

v.

Jack DUCKWORTH and Linley E. Pearson, Respondents-Appellees.

No. 82–1554.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1982.

Decided Aug. 25, 1983.

Rehearing and Rehearing En Banc Denied Nov. 29, 1983.

Scott King, Merrillville, Ind., for petitioner-appellant.

Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from the district court's denial of a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

On March 5, 1975 at the street corner of 26th and Broadway in Gary, Indiana, a gas station attendant was robbed at gun point by two men. The victim identified the petitioner, John Terry, from police photograph files as one of the robbers. Sometime prior to the robbery, Terry had frequented the vicinity of the gas station. An information was filed charging Terry with the crime and a warrant issued for his arrest on March 15, 1975. The warrant was issued for Terry's arrest at 1968 Roosevelt Place, Gary, Indiana. Terry, however, resided at 1978 Roosevelt Place. Terry was not arrested on the outstanding warrant until November 14, 1977, when he was stopped for an expired auto safety sticker. Terry's first judicial appearance in regard to the robbery charge was on that date. During the period from March 1975 to November 1977, petitioner resided in Gary, Indiana and was employed by the city.

At his trial, which commenced on August 14, 1978, Terry testified that due to the delay of some forty months before his trial, thirty-two months of which passed prior to arrest, he was unable to recall anything concerning the date of the alleged robbery. Terry was convicted by a jury and sentenced by the Lake Superior Court on September 14, 1978 to a term of ten to twenty-five years. A direct appeal was taken to the Court of Appeals of Indiana which affirmed the conviction. *Terry v. State,* 400

---

[*] The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

N.E.2d 1158 (Ind.App.1980). Terry filed a petition for a writ of habeas corpus in the federal district court alleging a violation of his right to a speedy trial. On March 29, 1982, the district court denied the petition and, in its Memorandum of Decision and Order, ruled that Terry failed to demonstrate a sufficient causal relationship between the delay and any actual prejudice. On appeal, the sole issue presented for review is whether the thirty-two month delay between the filing of criminal charges and Terry's arrest violated his right to a speedy trial as guaranteed by the United States Constitution. For the following reasons we agree with the district court that Terry has not been deprived of his right to a speedy trial.

■ A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment which is applicable to state criminal proceedings through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The right to a speedy trial arises when a person becomes an "accused." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). A person becomes an accused when prosecution is initiated against him, either through "a formal indictment or information or [by] the actual restraints imposed by arrest and holding to answer a criminal charge...." *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. In this case, Terry's right to a speedy trial attached on March 19, 1975 when he was charged by information and a warrant issued for his arrest. *United States v. Hauff,* 461 F.2d 1061, 1063 (7th Cir.1972).

■ The right to a speedy trial is an amorphous concept which "necessitates a functional analysis of the right in the particular context of the case...." *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). In *Barker* the United States Supreme Court formulated an *ad hoc* "balancing test" entailing four factors to be considered in evaluating claimed violations of the right to a speedy trial. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The factors are: length of delay, reason for the delay, timeliness of defendant's assertion of his right, and resultant prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. No one factor is dispositive to the finding of a violation of the right to a speedy trial. These factors, rather, must be considered together with the circumstances of each case. *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. We will deal with each of the above four factors separately.

### Length of Delay

■ The Court in *Barker* viewed the length of delay both as a "triggering" mechanism and as one of the four components of the balancing test. Until the delay becomes "presumptively prejudicial," the balancing test is not triggered and a court need not consider the remaining three factors. Once the balancing test is triggered, the court must then balance all four factors. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

■ We find the thirty-two month delay between the filing of the information and Terry's arrest is "presumptively prejudicial." Although the Court in *Barker* declined to specify durational limits in this threshold inquiry, the Court indicated that the length of delay sufficient to invoke the presumption depends upon the circumstances of the case, such as the degree of complexity involved. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. An ordinary street crime, such as the robbery in this case, is ordinarily not complex to investigate and prosecute. Moreover, delays of this length and much less have been held sufficient to establish a presumption of prejudice. *See, e.g. United States v. Jackson,* 542 F.2d 403 (7th Cir. 1976) (one year delay); *United States v. Fairchild,* 526 F.2d 185 (7th Cir.1975) (27 month delay); *United States v. De Tienne,* 468 F.2d 151 (7th Cir.1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 977, 35 L.Ed.2d 274 (1973) (19 month delay).

A thirty-two month delay, however, does not lead inevitably to the conclusion that petitioner was deprived of his right to a speedy trial. In *Barker,* for example, the Supreme Court held that a delay of over five years between arrest and trial did not under the circumstances of that case deny

the defendant his constitutional right to a speedy trial. The Court in *Barker* specifically ruled that "deprivation of the right to a speedy trial does not *per se* prejudice the accused's ability to defend himself." 407 U.S. at 521, 92 S.Ct. at 2187. Rather, the longer the delay, the greater the weight that factor receives in the balance. *United States v. Macino,* 486 F.2d 750, 752 (7th Cir.1973).

*Explanation for the Delay*

In balancing the four factors, the weight assigned to the delay is determined in part by the explanation given for the delay. "A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence ... should be weighted less heavily.... Finally, a valid reason ... should serve to justify appropriate delay." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.

The precise reason for the thirty-two month delay does not appear in the state court record.[1] Although the record indicates a hearing was held on petitioner's motion to dismiss, a transcript of that hearing is not part of the record. Absent any direct evidence on this point, we cannot presume either a deliberate attempt on the part of the state to hamper the defense or a valid justification for the delay. *United States v. Macino,* 486 F.2d 750, 753 (7th Cir.1973). The record does, however, reveal that the warrant was incorrectly addressed. Respondents suggest that the warrant was misplaced. In light of these circumstances, the district court concluded that the reason for the delay was negligence on behalf of the state.[2] Since there is nothing in the record or contended by the parties that would lead us to infer that the delay was due to anything other than negligence or inadvertence, this factor must be given some weight in defendant's favor. *See generally, United States v. Carreon,* 626 F.2d 528, 534 (7th Cir.1980) (negligence to be weighed less heavily than intentional delay); *Jones v. Morris,* 590 F.2d 684, 686 (7th Cir.1979) (absence of reason for delay should be weighed against the state); *United States v. Jackson,* 542 F.2d 403, 407 (7th Cir.1976) (failure to account for delay may be weighed against the state); *United States v. Lockett,* 526 F.2d 1110, 1111–12 (7th Cir.1975) (government's failure to give a reason tends to favor defense).

*Assertion of Right*

The third factor which must be considered concerns petitioner's responsibility to assert his right to a speedy trial. *Barker,* 407 U.S. at 528–29, 92 S.Ct. at 2191. This factor has little relevance in light of the facts presented by this case. Petitioner first learned of the charges against him at the time of his arrest in mid-November 1977. Since petitioner, through no fault of his own, was supposedly unaware of the pending charge and outstanding warrant, he was not in a position to assert his right. Petitioner's attorney filed a motion to dismiss on March 10, 1978, approximately 3½ months after his arrest and first judicial appearance. Although that was not a very speedy response for the filing of a motion, we do not assign significant blame to petitioner for the delay in asserting his right to a speedy trial. *United States v. Houston,* 450 F.Supp. 131, 133 (E.D.Tenn.1978) (defendant similarly unaware of indictment); *United States v. Judge,* 425 F.Supp. 499, 504 (D.Mass.1976). *See generally, Clark v. Oliver,* 346 F.Supp. 1345, 1350 (E.D.Va. 1972).

*Prejudice to Petitioner*

In holding that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment, the Supreme Court has expressed concern that delay in trying an accused may subject him to public scorn, deprive him of employment and curtail his rights of free speech and association. *Klopfer v. North Carolina,* 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1

---

1. Terry challenges, and we only focus on, the pre-arrest delay in this case. Furthermore, we need not apportion responsibility for the subsequent nine-month delay which can be attributed to both petitioner's requests for continuances and illness of the government's witness.

2. The Court of Appeals of Indiana similarly stated that even though "the record [was] silent upon these matters it [was] susceptible to the inference that the state was negligent." *Terry,* 400 N.E.2d at 1160.

(1967). The Court in *Barker* specifically identified three interests which the right to a speedy trial protects: to prevent oppressive pre-trial incarceration, to minimize anxiety and concern of the accused, and to reduce the risk of impairment to the defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Recently in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), the Court outlined the rationale behind the speedy trial guarantee stating:

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

456 U.S. at 8, 102 S.Ct. at 1502.

In Terry's case there was no pre-trial incarceration or deprivation of employment. Terry's interests in minimizing anxiety associated with a pending criminal charge and exercising his rights to free speech and association were unaffected because he was not aware of the outstanding warrant. Thus, the only relevant interest to consider is that of defense impairment.

Terry makes two contentions with regard to prejudice to the defense. First, Terry asserts that because the delay occurred between the filing of the charge and his arrest, he should not be required to articulate specific instances of prejudice.[3] According to Terry, a delay of the magnitude involved herein "so obviously" prejudices "a defendant's ability to adequately defend himself that the necessity of demonstrating specific prejudicial occurrences is obviated." However, the Court in *Barker* specifically ruled

that "deprivation of the right to a speedy trial does not *per se* prejudice the accused's ability to defend himself." 407 U.S. at 521, 92 S.Ct. at 2187.

Second, Terry testified at trial that he had no recollection of his whereabouts on the date of the alleged crime. He now claims that this testimony established memory loss and is sufficient to demonstrate prejudice to his defense.

Terry's argument fails, in part, because it depends upon the truthfulness of his trial testimony. The jury heard all the incriminating evidence as well as Terry's testimony. The jury had the opportunity to observe Terry's demeanor on the witness stand and to judge his credibility. The jury did not believe him. By returning a verdict of guilty, we may assume that the jury found that Terry did recall his whereabouts and activities on the night of March 5, 1975, and that his loss of memory was merely a convenient alibi. Moreover, Title 28 U.S.C. § 2254(d) limits the federal court's power of review in a habeas corpus proceeding. Section 2254(d) provides that the federal court must presume the state court's findings of fact are correct, unless one of eight enumerated grounds exists for making an exception. In general, if one of the exceptions exists, the federal court must grant an evidentiary hearing to the habeas petitioner to resolve the facts in question. Thus, to properly assail the factual findings of the state court as permitted by 28 U.S.C. § 2254(d), Terry should have focused upon the inadequacies, if any, in the hearing on the motion to dismiss and requested the district court to conduct an evidentiary hearing concerning both his loss of memory claim and reason for the delay in prosecu-

---

3. The petitioner relies on *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) to support his position that he is not obligated to demonstrate any actual prejudice in order to show a violation of his right to a speedy trial. In vacating the Arizona Supreme Court's judgment denying defendant's state petition for a writ of habeas corpus without a hearing, the Court stated:

> The state court was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim. *Barker v. Wingo* express-

ly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.

414 U.S. at 26, 94 S.Ct. at 189.

> However, we read *Moore* as proscribing the use of the prejudice factor as the "triggering mechanism" for consideration of the other three factors. In considering petitioner's appeal we have carefully weighed *all* of the factors in light of the relevant circumstances presented.

tion. *See generally, Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). We conclude, therefore, that the prejudice factor does not weigh in Terry's favor.

■ With only two of the four balancing factors weighing moderately in Terry's favor, we hold that Terry's right to a speedy trial has not been violated. The order of the district court is affirmed.

WILLIAM J. CAMPBELL, Senior District Judge, dissenting.

I regret that I cannot join the two learned and experienced appellate judges on this panel because, in my judgment, their reasoning is seriously flawed in numerous respects and the result is extremely unfair. Their analysis misapplies the substantive principles clearly stated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971) and *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Furthermore, in their factfinding the majority ignores the procedural requirements of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and misconstrues the unambiguous language of 28 U.S.C. § 2254(d). Even beyond these problems, I am dismayed that these judges have failed to address the crucial legal question raised by the petitioner: How can one demonstrate a complete loss of memory for purposes of showing actual prejudice in a speedy trial context? The resolution of this issue is avoided through reliance on an illogical syllogism: A man claims an inability to defend himself against a criminal charge because the passage of time has eradicated his memory of his whereabouts at the time of the crime; the jury finds him guilty; therefore, the man is lying. I cannot accept such reasoning and I cannot accept the result in this case.

Petitioner, John Terry, was arrested on November 14, 1977 and charged with robbing the Clark gas station at the corner of 26th Street and Broadway in Gary, Indiana, on March 5, 1975. The arrest warrant had been outstanding for thirty-two months. The only explanation for the delay is that Terry's address on the arrest warrant was stated to be 1968 instead of 1978 Roosevelt Place, Gary, Indiana.[1] The state court noted that there was no evidence that Terry ever left Gary during that period, used an alias, or tried to avoid discovery in any way, *Terry v. State,* 400 N.E.2d 1158, 1160 (Ind. App.1980). He lived at 1978 Roosevelt Place from 1971 to 1976 when he moved to another address in Gary. He was employed during the entire thirty-two months in the municipal area and, in fact, was an employee of the City of Gary for two years during that period.

Prior to trial, Terry filed a Motion to Dismiss on the basis of the violation of his right to speedy trial. That motion was denied. The transcript of that hearing, if one was made, is not a part of the state court record and thus we do not know if any findings of fact were made.

Terry's case came to trial on August 14, 1978. The state's case was not strong. Only two witnesses testified: Arthur Baker, the gas station attendant-victim; and Joe Starks, the investigating officer. Baker testified that he was the only employee working that night at the Clark station but that a friend, Melvin Dungan, was there keeping him company. Two men spoke to Dungan about losing money in the soda machine and Dungan sent Baker to help them. When Baker started to open the soda machine the men pulled guns, took him in the alley, and robbed him. The next day Baker picked out Terry's picture from a book of mug shots. The alleged accomplice was never identified or located. Dungan, although an eyewitness, never identified anyone, nor did he make any statement to the police. He also did not testify at trial.[2]

---

1. This explanation was offered for the first time in the district court; there is no mention of it in the state court record. Furthermore, there is no evidence in the record of any attempt to serve the warrant or to correct the misinformation.

2. Despite the fact that Dungan did not take the stand, he was permitted to testify through inadmissible hearsay elicited from Baker by the state's attorney:

   Q. Do you know whether or not Melvin Dungan can identify any one?
   A. He said that he could remember one of them.
   Q. Do you know which one?
   A. Him.

No guns, clothes, fingerprints or other tangible evidence linking Terry to the crime were ever offered into evidence.

Thus, the crucial evidence was Baker's identification of Terry. However, even that testimony had significant weaknesses. At a pretrial deposition, Baker testified that he was able to identify Terry because he had gone to high school with him approximately twenty years earlier at Roosevelt High School in Gary. However, the defense obtained documentary evidence proving that Terry had gone to Booker T. Washington High School in Jonesboro, Arkansas and had never gone to Roosevelt. In discovery, the defense revealed this evidence to the prosecutor who then informed Baker of this flaw in his testimony. At trial, Baker testified that he knew Terry from seeing him on the streets and in a local pool hall. While admitting that he had originally thought he had gone to school with Terry, he claimed that after giving it more thought he decided that he had been mistaken. Baker repeatedly denied on cross-examination that the state's attorney, or anyone else, had told him before trial that there was any evidence that Terry did not go to Roosevelt High School. However, after a recess in the trial, the prosecutor put Baker back on the stand. Baker then admitted that he had been told earlier of the contradictory evidence and that he had lied when he denied it because he was afraid if he told the truth it would hurt the state's case.

Detective Starks then took the stand and testified to his investigation of the crime, which consisted of taking a statement from Baker and having him look at mug shots. He also testified that Terry used to hang around Starks' barber shop on West 25th Street (about two blocks from the Clark

Q. Do you know whether or not he ever identified any one in this case?
A. I don't think he went to the police station. And I seen him a few times after this, but it had been a little while. R. 183–184.

I note, however, that the record does not reflect any objection by defense counsel to this prejudicial hearsay.

station) in the late 1960's and early 1970's. After Starks' testimony, the state rested.

The defendant took the stand[3] and testified that he had gone to Booker T. Washington High School in Jonesboro, Arkansas and this was corroborated by documentary evidence. He also stated that he had lived near 25th Street in the late 1960's and early 1970's and had his hair cut regularly by Joe Starks. He testified that he had gone to the Clark station for gas a few times when he lived in the neighborhood,[4] but did not recall ever seeing Baker. He specifically denied committing the crime alleged and testified regarding his memory loss.

Q. Now, you've heard the testimony that's been given here today by the complaining witness. Calling your attention to March 5, 1975, do you recall where you were at that time?
A. No.
Q. You have no idea where you were?
A. No.
Q. Were you at the Clark Service Station?
A. No, sir. R. 246.

\*   \*   \*   \*   \*   \*

Q. [T]hink carefully. Can you recall where you were on March 5, 1975?
A. No, sir.
Q. You have no idea where you were at that time?
A. No, sir, it's been so long ago. R. 261.

The state obtained no significant admissions or contradictions on cross-examination.

Based on this evidence, the jury found Terry guilty of robbery. At sentencing, the trial judge stated that he was surprised by the verdict but he refused to set it aside. Terry was sentenced to 10–25 years incarceration.

3. Terry had never been convicted of any felony at the time of trial.

4. This must be the testimony that the majority relies on for the statement "Sometime prior to the robbery, Terry had frequented the vicinity of the gas station." There is no evidence that Terry was ever near the gas station before the robbery except Starks' testimony relating to events 3–5 years prior to the alleged crime.

A divided Indiana Court of Appeals affirmed the conviction. *Terry v. State, supra.* In addressing Terry's speedy trial claim, the court analyzed the four factors stated in *Barker, supra.* It found that the delay between the filing of the charge and the arrest was presumptively prejudicial and that the record was "susceptible to the inference that the state was negligent." 400 N.E.2d at 1160. The court also noted that "Terry suffers no adverse inference from his failure to assert his [speedy trial] rights since he was unaware of the pendency of the charge," *Id.* On the issue of prejudice, the majority focused on the alleged impairment to Terry's defense caused by the delay:

Terry makes no showing of any actual impairment. There are no factual contentions that witnesses died or were unavailable or were unable to remember. 400 N.E.2d at 1161.

Based on their determination that Terry had shown no prejudice, the majority concluded that he had not been denied his right to a speedy trial.

The weakness in the majority's reasoning was clearly demonstrated in Judge Staton's dissent:

The resulting prejudice to him is clear. The majority's conclusion that Terry must show actual prejudice is reminiscent of the proverbial "dog-chasing-its-tail". If Terry had been able to reconstruct the events in his life on the date of the robbery, he might have been able to structure some type of defense. As it was, this was impossible.

\* \* \* \* \* \*

In practical terms, could we reconstruct our activities on a day which occurred over two and one-half years ago? I doubt it. 400 N.E.2d at 1164.

Having obtained no relief in the state courts,[5] Terry filed a Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Indiana. His petition was denied. In its memorandum opinion, the court essentially tracked the reasoning of the state appellate court as to the first three factors stated in *Barker.*

On the final issue of prejudice it also analyzed the alleged impairment to Terry's defense:

However, what defense which might have been raised is left to speculation. [sic] Petitioner has not shown a sufficient causal relationship between the delay and any actual prejudice. Such a claim is the ideal defense fabrication. The Court is unwilling to say that the petitioner has been significantly prejudiced by a memory loss which is so complete as to be only conjecture. Memo p. 7.

This reasoning has no merit, and I believe that it is significant that the majority herein does not adopt it. Terry's attempted defense is obvious from the record. He tried to demonstrate to the jury that he was somewhere else on the night of March 5, 1975. This is commonly known as an alibi defense. The causal connection between the delay and the impairment to the defense is also obvious. Due to the passage of time, he could not recall where he was that night and thus could not produce any corroborating witnesses or evidence. Furthermore, such a claim is not the ideal defense fabrication since loss of memory in itself is neither a denial nor a defense to a charge of robbery. If the petitioner had really intended to present a fabricated defense, he would have concocted a specific alibi and obtained someone to corroborate it.

On this appeal, the majority has denied the petition on a new rationale not proposed by any of the prior courts. They conclude that Terry was lying when he testified at trial regarding his lack of memory:

Terry's argument fails, in part, because it depends upon the truthfulness of his trial testimony. The jury heard all the incriminating evidence as well as Terry's testimony. The jury had the opportunity to observe Terry's demeanor on the witness stand and to judge his credibility. The jury did not believe him. By returning a verdict of guilty, we may assume that the jury found that Terry did recall his whereabouts and activities on

**5.** It is undisputed that Terry has exhausted his    state remedies.

the night of March 5, 1975, and that his loss of memory was merely a convenient alibi.[6]

I detect a lack of logic in this reasoning. It is an elemental principle of jurisprudence that the preclusive effect of a general guilty verdict extends only to those facts necessary to support the elements of the crime charged. Loss of memory is neither a denial nor a defense to any element of the crime of robbery. Therefore, the jury's verdict of guilty is not a proper predicate for a finding by this court that Terry lied when he testified to his loss of memory.

More importantly, the court cannot logically rely on the jury verdict to reject Terry's constitutional argument. In *Barker,* the court stated:

> [T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system. 407 U.S. at 532, 92 S.Ct. at 2193.

Terry has argued that he was unable to present an adequate defense because of the delay caused by the state's negligence in executing the warrant. The majority is now saying, in essence, the jury found you guilty and therefore we do not need to reach the issue of whether you had a fair trial.

The majority attempts to buttress its reliance on the jury's verdict by suggesting that 28 U.S.C. § 2254(d) creates a presumption that the jury's alleged finding on Terry's memory loss is correct.[7] However, by its own terms § 2254(d) applies to state court findings "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." Neither of the state courts to address this case made such a finding or even suggested that such an inference was permissible. A general verdict of guilty cannot be elevated to this level with regard to a factual finding unrelated to the guilt of the accused.

There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant, *Townsend v. Sain,* 372 U.S. 293, 313–314, 83 S.Ct. 745, 757–758, 9 L.Ed.2d 770 (1963).

Even assuming that § 2254(d) applied in this situation, Terry's speedy trial argument clearly states a claim within the meaning of the exception provided in 28 U.S.C. § 2254(d)(6):

> ... that the applicant did not receive a full, *fair and adequate* hearing in the State court proceeding.

Therefore, Terry's constitutional claim cannot be avoided even under that rationale.

The majority also contends that Terry's claim must fail because he had not satisfied his burden of demonstrating actual prejudice. First, they attack petitioner's reliance on *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) for the proposition that an affirmative showing of prejudice is not necessary to prove a denial of the right to speedy trial. The majority states in footnote 3:

> [W]e read *Moore* as proscribing the use of the prejudice factor as the "triggering mechanism" for consideration of the other three factors.

How they read it that way is a mystery to me. In *Moore,* the Arizona Supreme Court had rejected Moore's speedy trial claim stating:

> Therefore since *Dickey* [*Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970)] and *Barker* require a showing of prejudice in order to reverse, we cannot say that defendant was prejudiced

---

**6.** The majority's description of Terry's memory loss as a "convenient alibi" is a gross mischaracterization. As noted above, loss of memory is not a defense to the crime of robbery and thus it cannot be an alibi. Furthermore, as the result of his case clearly demonstrates, Terry's inability to recall his activities on the night of March 5, 1975 was hardly convenient. But what is particularly unfathomable to me is that the majority, and apparently the district court, actually believe that this man went to trial with the strategy of lying about his ability to remember his whereabouts on the night of the crime. That would hardly be the tactic of a sane defendant.

**7.** It is interesting to note that no party or court has previously contended that § 2254(d) was applicable to this case.

and his claim of lack of speedy trial is not tenable. *State v. Moore,* [109 Ariz. 111] 506 P.2d 242, 245 (Ariz.1973).

The United States Supreme Court vacated the judgment and remanded, stating:

> The state court was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim. *Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.* [Emphasis supplied] 414 U.S. at 26, 94 S.Ct. at 189.

This language is unambiguous and requires no interpretation. Nowhere in *Moore* was the term "triggering mechanism" used or discussed. Furthermore, the Court in *Moore* relied on the following language from *Barker:*

> We regard none of the four factors identified above [including prejudice] *as either a necessary or sufficient condition* to the finding of a deprivation of the right to speedy trial. [Emphasis supplied.] *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193 quoted in *Moore,* 414 U.S. at 26, 94 S.Ct. at 189.[8]

That language is also clear. Thus, the petitioner properly relied on *Moore* for the proposition it clearly states and for which it has been cited on numerous occasions, *United States v. Quinones,* 516 F.2d 1309, 1311 (1st Cir.), *cert. den.* 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); *United States v. MacDonald,* 632 F.2d 258, 269 (4th Cir.1980); *United States v. Campbell,* 531 F.2d 1333, 1335 (5th Cir.), *cert. den.* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *Trigg v. State of Tennessee,* 507 F.2d 949, 954 fn. 11

(6th Cir.), *cert. den.* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975); *United States v. Anderson,* 621 F.2d 292, 294 (8th Cir.), *cert. den.* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); *United States v. Henry,* 615 F.2d 1223, 1232 fn. 12 (9th Cir.1980).[9]

Despite the fact that under *Barker* and *Moore* Terry was not required to demonstrate actual prejudice, I believe that he has prevailed as to that factor. Every court that has reviewed his case has found that the thirty-two month delay was "presumptively prejudicial." The state has never contested that proposition. Yet no court has given Terry the benefit of that presumption. That presumption is especially important in this case because due to the nature of the claim it is impossible for the petitioner to give a detailed presentation of the prejudice. The majority suggests that Terry should have requested an evidentiary hearing in the district court on the issue of his memory loss.[10] However, the state has never contested his assertion of memory loss except to make the weak argument that the jury's verdict impliedly found that he was lying. Even if a hearing were held, what more could Terry do but repeat his state court testimony? Surely, no other witness would be competent to testify to Terry's ability to remember the events of March 5, 1975. Such a hearing would be an exercise in futility.

Even though Terry is entitled to the presumption of prejudice, that should not mean that he automatically prevails on the fourth *Barker* factor. I believe it would be appropriate in this type of case to require that there be a reasonable possibility that the jury could have reached a different result

---

**8.** This principle was recently reiterated in *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* —— U.S. ——, ——, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983) in identical terms.

**9.** Recently, this Court stated in *United States v. Deleon,* 710 F.2d 1218 (7 Cir.1983):

> The fourth and final factor is prejudice to the defendant because of the delay. With respect to this factor Deleon notes that according to *Moore v. Arizona,* 414 U.S. 25, 26 [94 S.Ct. 188, 189, 38 L.Ed.2d 183] (1973), an

affirmative showing of prejudice by the defendant is unnecessary. P. 1222.

While the panel in that case did not construe *Moore,* I believe it is significant that it did not take issue with Deleon's interpretation of that case's holding.

**10.** If the majority believe that an evidentiary hearing is appropriate, it has a duty to remand the case for that purpose, *Townsend v. Sain,* 372 U.S. at 312, 83 S.Ct. at 756, and not permit petitioner's claim to "founder in a procedural morass," *see Harris v. Nelson,* 394 U.S. 286, 292, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969).

by considering the asserted evidence foreclosed by delay, *see United States v. Walton,* 411 F.2d 283, 288 (9th Cir.1969); *Estrella v. United States,* 429 F.2d 397, 400 (9th Cir.1970). If there was overwhelming evidence against the petitioner we might be justified in looking askance at a claim of lack of memory and loss of evidence. However, in this case the only incriminating evidence against Terry was the identification testimony of Baker which, as discussed previously, had significant weaknesses. Furthermore, we have the statement by the trial judge that he was surprised by the verdict. Under these circumstances I believe there is a reasonable possibility that if Terry had been able to present a specific alibi the jury could have reached a different result. Therefore, I believe that Terry has prevailed as to the fourth factor of *Barker.*

*Barker* requires that in analyzing a speedy trial claim we must apply a balancing test, utilizing the four factors stated therein, which weighs the conduct of both the prosecution and the defendant. Every court to review Terry's case has concluded that he prevails on the first two factors since the thirty-two month delay was presumptively prejudicial and caused solely by the state's negligence. The courts have also agreed that the third factor, the defendant's assertion of his right to speedy trial, has little significance in the context of this case. As to the fourth factor, I believe that under the analysis proposed above Terry must prevail. Therefore, balanced against Terry's conduct and situation is only the state's inexcusable failure to perform its constitutional duty to make a diligent, good-faith effort to bring him to trial, *see Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). Un-

der the standard of *Barker,* Terry has clearly demonstrated a denial of his constitutional right to speedy trial and his entitlement to the Writ of Habeas Corpus.

In summary, I would note that the parties agree that this is a case of first impression.[11] In its memorandum before the district court, the respondent stated:

> In a sense this case presents a unique situation for the Court's consideration. Respondents have been unable to find any case dealing with a delay between the filing of the information and arrest where the delay was not attributable to the defendant.

Furthermore, this is the first reported case in which a petitioner has made a reasonable claim of total memory loss in a speedy trial context. However, all the courts which have reviewed Terry's claim have failed to address the issue of how a person can demonstrate prejudice in this type of situation. Instead, they have resorted to intellectual short cuts to avoid the question squarely presented by the record in this case. The Indiana Court of Appeals begged the question by saying Terry hadn't demonstrated prejudice, the district court simply obscured the issue, and the majority here has concluded, on an insufficient basis, that Terry is lying. The obvious answer to the question is that petitioner cannot show specific examples of actual prejudice in this situation and that he cannot reasonably be required to satisfy such an impossible burden. As discussed above, I believe the principles of *Barker* and *Moore* provide the necessary analytical framework for resolving Terry's claim. Based on those principles, I agree with Judge Staton that Terry was denied his constitutional right to a speedy trial and

11. The district court noted that the similarity of *State v. Cornell,* 440 Ohio Misc. 29, 335 N.E.2d 891 (1975) to this case caused him "some consternation." While that case is certainly favorable to the appellant, the facts are less egregious than those here. In *Cornell* the defendant was arrested on January 10, 1972, but was officially informed on February 12, 1972 that the charge against him was dismissed. What he was not told was that the reason the charge had been dismissed was because the grand jury had indicted him on February 8, 1972 for the

same occurrence. He was unaware of this fact until he was arrested again some thirty-five months later on the same charge (despite his continual availability). The court in *Cornell* granted the defendant's motion to dismiss the charge. While that case bears some similarity to this case, the defendant in *Cornell* at least had reason to focus on the time frame of the alleged crime and thus was not subject to the complete and reasonable memory loss which has so damaged Terry.

that as a result of that denial his trial was unfair. In my opinion, this is the one petition in a thousand in which the writ should be granted.

Accordingly, I would grant the Writ of Habeas Corpus and release the petitioner.