. [Crim. No. 1035. Second Appellate District, Division One.—November 16, 1923.]

## In the Matter of the Application of THOMAS P. GERE for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—DELAY IN BRINGING DEFENDANT TO TRIAL—BURDEN OF SHOWING GOOD CAUSE.—The burden of showing good cause for delay in not bringing a defendant to trial within sixty days after the finding of the indictment is upon the prosecution.

[2] ID.—CONCEALMENT OF IDENTITY — WAIVER OF DELAY—TIME.—One whose dissimulation, falsity, and deceit have been a contributory factor in the delay in the matter of his apprehension is in no position to complain that he was not arrested and his case not brought to trial within sixty days after the filing of the indictment or information. In such a case the constitutional and statutory right to a speedy trial would be available to him only after he had been taken into custody and the court had acquired jurisdiction to proceed with the trial.

[3] ID.—GOOD CAUSE FOR DELAY—EVIDENCE.—On this proceeding in habeas corpus to secure the release of petitioner upon the ground that he was not brought to trial within sixty days after the finding of the indictment against him, the showing by the prosecution of what was done to locate petitioner and also of his own misconduct constituted good cause for the delay in his apprehension.

[4] ID.—FAILURE TO INDORSE NAMES OF WITNESSES UPON INDICTMENT —EVIDENCE.—Under section 995 of the Penal Code the only witnesses competent to prove that the names of all the witnesses examined by the grand jury were not inserted at the foot of the indictment or indorsed thereon are the foreman and the secretary

of the grand jury; and where the foreman has testified that he has no sufficient recollection on the subject to state the facts, and the secretary has testified that no witnesses appeared before the grand jury other than those whose names appear on the indictment, the notes of the phonographic reporter are not admissible to prove that other witnesses were examined by the grand jury and that their names were not indorsed upon the indictment.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody on the ground of failure to bring him to trial within sixty days. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Petitioner.

Asa Keyes, District Attorney, for Respondent.

SHENK, J., *pro tem.*—On the eighth day of September, 1920, an indictment was found by the grand jury of Los Angeles County and returned to the superior court, charging the petitioner and others with the crime of grand larceny. Thereupon the court ordered bench warrants issued for the apprehension of the several defendants and fixed bail thereon. The case is referred to as one of a series of "bunco cases." A codefendant of petitioner, one Otis B. Berry, was arrested, tried, and convicted. The judgment as to him was affirmed in *People* v. *Berry*, 191 Cal. 109 [215 Pac. 74]. On September 20, 1920, the sheriff received the warrant for the arrest of the petitioner. He was taken into custody in the city of Los Angeles on August 13, 1923, duly arraigned in the superior court, and on his plea of not guilty the case was set down for trial on October 8th. The petition herein was filed on September 26th, and the trial has been continued pending a determination of this proceeding.

Petitioner alleges that he is unlawfully restrained of his liberty, first, in that his case was not brought to trial within sixty days after the finding of the indictment and no good cause shown for the delay, and, secondly, in that the names of all the witnesses appearing against him before the grand jury were not indorsed on the indictment before it was presented to the court.

After his arraignment and before his plea the petitioner moved the trial court to dismiss the indictment on the same grounds now alleged in his petition for a writ of *habeas corpus.* The trial court took testimony for and against the motion extending over a period of several weeks as the business of the court would permit and denied the motion. When the matter was called in this court the same was submitted for decision on the petition and return, on the records of the trial court and on the transcript of the testimony taken by that court on the hearing of the motion to dismiss.

In support of his first contention the petitioner relies on the following provisions of section 1382 of the Penal Code: "The court, unless good cause to the contrary is shown, must order the prosecution dismissed in the following cases: . . . 2. If a defendant, whose trial has not been postponed on his application, is not brought to trial within sixty days after the finding of the indictment or filing of the information." And he bases his right to test, in a proceeding of this kind, the question of his unlawful detention after the expiration of the sixty-day period on *In re Begerow,* 133 Cal. 349 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828], where the petitioner was discharged, for the reason that no good cause for a delay beyond the statutory period was shown. It is therefore necessary to determine whether or not the facts and circumstances here shown constituted good cause for delay.

It is the contention of the petitioner that since the finding of the indictment he has lived continuously in the city of Los Angeles and that if the prosecution had exercised reasonaable diligence he could have been arrested and brought to trial without delay. On the part of the respondent it is contended that the petitioner went under numerous assumed names and made false statements for the purpose of avoiding identification, and that his conduct in that respect was so culpable as to deprive him of the benefit of the law requiring diligent prosecution.

[1] The burden of showing good cause for delay is upon the prosecution. (*People* v. *Morino,* 85 Cal. 515 [24 Pac. 892].) In this behalf the respondent shows that under date of September 15, 1920, the district attorney of Los Angeles County caused to be printed and sent to the police departments of the principal cities of the United States a circular

bearing what purported to be a photographic likeness of the petitioner over which were the words "Arrest this man," and beneath which was the name "Louis Gear" in large letters, followed by smaller lettered words of description, including the following: "*Alias* Thomas Gere, *alias* Thomas McLain, *alias* George Wilson. . . . This man is wanted for the crime of grand larceny, having buncoed a man out of fifty thousand dollars by means of fake stock deals. Address all communications or wire information to" the district attorney of Los Angeles County. These circulars were not broadcast in the city of Los Angeles, but deputy sheriffs were detailed to the especial duty of ferreting out and arresting men guilty of this particular class of crime. The deputy sheriff in charge of these investigations at the time of the finding of the indictment against petitioner died shortly thereafter and another deputy was assigned in his place. Just what efforts he employed during the short time he was in charge is not disclosed, but in April, 1921, another officer was placed in charge who sought in numerous ways to locate the petitioner. In company with the complaining witness, John F. Herr, this officer went out some two dozen times in an endeavor to locate him, but without avail.

The photograph of petitioner hereinbefore mentioned, was obtained from the Los Angeles police department and on it was indorsed "L. Gear," as the name of the person whose photograph it purported to be. Petitioner was also known as Louis Gear, Louise Gere, Thomas Geree, Thomas Gecre, Thomas McLain, George Wilson, George Baily, and Fred Williams. A witness who was a neighbor of petitioner for over two years testified that he knew him as Gcree (pronounced Ge-ray). The complaining witness knew him as Fred Williams. In this connection it may be related that the petitioner was designated in the indictment as Fred Williams. The supreme court refers to him in the case of *People* v. *Berry,* 191 Cal. 109 [215 Pac. 74, 78], in the following quotation: "Mr. Herr (the prosecuting witness) made the acquaintance of Fred Williams in a city park in Los Angeles. They soon thereafter visited another of the city's recreation grounds, namely, Westlake Park, where they had the misfortune (for Herr) to meet Dorchester. We have already had some inkling of Dorchester's pursuits, which, the sequel shows, were shared by Williams. Herr

was induced by these worthies to enter into a fictitious stock transaction, during the course of which he entrusted to Williams, duly indorsed, 60 shares of Pennsylvania Railroad stock, 1,000 shares of Guarantee Trust Company stock, a bank certificate for $500, $650 in travelers' checks, together with $12,000 of Liberty bonds. All these valuables were by Williams 'lost' in the same manner as Donohue's securities, and Herr was hurried off to New Orleans, where his recently found friends were to join him and together they were to retrieve their ill fortunes."

The foregoing is recited not as indicating petitioner's guilt, for he has not been tried, but for the purpose of suggesting the likelihood of petitioner's endeavor to conceal his identity and thus avoid arrest if the recited facts be true.

Petitioner was taken into custody on August 13th, not because he was recognized as the defendant in said action, but because of the suspicious circumstance that he was seen in the company of one Gleason, who was wanted in the state of Georgia on a similar charge. The officer who took petitioner into custody testified that when the arrest was made the petitioner gave his name as Williams or Wilson. Petitioner was taken to the district attorney's office and questioned. He there stated that he was a newspaper man employed on a New York newspaper and had been in California between two and three months. He was then placed in the county jail. When he was booked at the jail he stated to the clerk that his residence was at Rivera and that he had been in this state three weeks. Then or shortly thereafter he was identified as the Fred Williams named as a defendant in the indictment then pending. When arraigned he first gave his true name as Louis Geere. Later on in the trial court he gave his true name as Thomas P. Gere and the proceeding in this court is conducted by him under the name last given.

It is conceded that the constitutional guaranty of a speedy trial and the provisions of section 1382 of the Penal Code adopted in pursuance thereof do not operate in favor of a fugitive from justice. It must also be true that the law on this subject should not be permitted to work to the advantage of one whose arrest has been delayed because of his own wrong. **[2]** In other words, one whose dissimulation, falsity, and deceit have been a contributory factor in the delay in the matter of his apprehension is in no position to com-

plain that he was not arrested and his case not brought to trial within sixty days after the filing of the indictment or information.   In such a case the constitutional and statutory right to a speedy trial would be available to him only after he had been taken into custody and the court had acquired jurisdiction to proceed with the trial. In *Ford* v. *Superior Court,* 17°Cal. App. 1 [118 Pac. 96], the court, in an original proceeding in mandate, ordered a prosecution dismissed because no good cause for the delay had been shown.   The only reason there given for the delay was that an alleged material witness for the prosecution, not under subpoena or order of court, was out of the state and was expected to return at some future time.   In commenting on the facts and circumstances shown in that case the court said: ''Of course, underlying all that has been said is the familiar maxim of jurisprudence that 'No man can take advantage of his own wrong'; and a showing that the absence of an adverse witness was instigated, or knowingly aided and abetted, by a defendant would be ample justification for prolonged, if not indefinite, continuances, in aid of a *bona fide* endeavor to apprehend a defaulting witness which in all likelihood will result in his return to the jurisdiction of the court.''

[3]   The petitioner sought to rebut the showing of diligence on the part of the prosecution by proof, in response to allegations of the petition, that he had lived in the city of Los Angeles continuously since the finding of the indictment.   A brother-in-law of petitioner testified that he had known petitioner for about six years; that for three years he had visited at his place of residence several times; that for about one year prior to his arrest the petitioner had been engaged with him in a financial way in his business as a ditch-digging contractor; that he did not know what petitioner's business was prior to the past year; that petitioner had lived in Los Angeles for over three years and had gone freely about the streets as a pedestrian and riding in automobiles, and that he had never disguised himself.   Petitioner's mother-in-law also testified that he had lived in Los Angeles during the past three years.   A neighbor of petitioner testified that she knew him under the name of Thomas Geere.   An employee of the brother-in-law testified that he had known petitioner for over two years as Tom Geere.   Another witness testified that he had seen petitioner six or

seven times during the past six or seven years.  It is also shown that the Los Angeles city directory for the year 1920 contained the name "Thomas P. Gere, real estate, 4900 5th ave."; for the year 1921 the name "Thomas P. Gere, traveling salesman, 4900 5th ave."; for the year 1922 the name "Thomas R. Geree, 1117 West 78th, writer," and for the year 1923 the name "Thomas Geree, salesman, 1117 West 76th st."

Such, in brief, was the showing by petitioner of his presence in Los Angeles since the finding of the indictment.  But notwithstanding such showing we have the proof as above outlined which satisfied us that the prosecution exercised reasonable diligence under the circumstances in an attempt to locate the petitioner.  In addition, it is reasonable to conclude from the facts disclosed in the record that the only purpose of petitioner in assuming numerous fictitious names from a time even prior to the finding of the indictment was to render his arrest less likely.  No reason for the change of names in the 1922 and 1923 directories is suggested and we have the admission of petitioner, which is not denied, that he had been in California but three weeks prior to his arrest.  The showing by the prosecution of what was done to locate the petitioner and also of his own misconduct in our opinion constitute good cause for the delay in his apprehension.  And, of course, no trial could be had unless he were in custody.  If he had succeeded in his purpose to deceive the authorities at the time he was taken into custody, the period of time between the finding of the indictment and his arrest would perhaps have been indefinitely lengthened.

Petitioner contends that as his photograph was in the possession of the police department it would be reasonable to suppose that he could be identified.  An observation of his dapper personal appearance in court and an inspection of the collarless and unshaven subject of the photograph lead to the conclusion that a casual or even a close observer would have difficulty in determining that the two were one and the same person.

[4]   The second contention of the petitioner, namely, that the names of all of the witnesses appearing against him before the grand jury were not indorsed on the indictment may be answered by the statement that the proof is entirely

lacking in support of the contention. Section 995 of the Penal Code provides that an indictment must be set aside "When it appears by the testimony of the foreman or secretary of the grand jury that the names of the witnesses examined by the grand jury. . . are not inserted at the foot of the indictment or indorsed thereon."

Respondent presents cogent reasons, but without the citation of authority, why the court should not entertain this point in this proceeding. The argument is that an order denying a motion to set aside the indictment on this ground is, if improperly made, no more than an error in the course of the proceedings in the trial court and reviewable only on appeal, and that when the motion is denied the defendant, under section 995 of the Penal Code, must immediately answer the indictment by demurring or pleading thereto. But assuming that the contention may properly be passed upon, it appears that the foreman of the grand jury was called as a witness for petitioner. He stated that he could not recall the names of all witnesses who appeared before the grand jury in the matter and that the only way he could ascertain them was by reference to the records which were in the hands of the secretary. The secretary was then called. He testified that no witnesses appeared before the grand jury in the case against Gere other than those whose names appeared on the indictment. Counsel for petitioner sought himself to examine the records of the grand jury and further sought to prove his contention by the phonographic reporter who took down and transcribed the testimony of the witnesses who appeared before the grand jury. He was very properly not permitted to do so. Obviously, the only witnesses competent to prove his contention were, under said section 995, the foreman and secretary of the grand jury. The foreman had not sufficient recollection on the subject to state the facts and by the secretary it was shown that there was no basis for the contention.

Other points are made by the respondent, but we deem it unnecessary to discuss them in view of our conclusions as to the contentions of the petitioner.

The writ is discharged and the petitioner is remanded.

Houser, J., and Curtis, J., concurred.