[Crim. No. 17276. Second Dist., Div. Five. June 23, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE BENJAMIN ALBIN, Defendant and Appellant.

## COUNSEL

Jesse Benjamin Albin, in pro. per., and Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael R. Botwin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant was originally charged by information with 13 counts of felony violations. In the interest of justice, all but two counts were dismissed.[1] After appropriate waiver by defendant and submission of the cause upon the grand jury transcript, in addition to the taking of other evidence, the court, sitting without a jury, found defendant guilty of count VII (grand theft, Pen. Code, § 487, subd. 1) and count XII (attempted grand theft, Pen. Code, § 487, subd. 1 and § 644). Probation was denied and defendant was sentenced on each count to the state prison for the term

---

[1] The clerk's transcript shows that all counts except counts V, VII and XII were dismissed. This is an obvious clerical error as the transcript and subsequent clerk records show that defendant was tried, convicted, and sentenced on but counts VII and XII.

prescribed by law, the sentences to run concurrently. Defendant appeals from the judgment of conviction.

The facts are that of the original 13 counts, count I charged defendant and others with conspiracy to commit grand theft. The other counts related to specific incidents during the period of November 9, 1966 to and including February 10, 1967, charged as either grand theft or attempted grand theft. Defendant was arraigned on March 3, 1967, and various continuances for plea were granted on motion of defendant. On April 14, 1967, defendant's motion under Penal Code section 995 was made and denied. Trial was set for April 20, 1967, then continued to June 5, 1967, at which time the defendant failed to appear when the case was called, bail was forfeited, and a bench warrant issued.

In the Los Angeles Municipal Court on May 4, 1967 (shortly after the April 20 trial setting and before the June 5 date), a separate hearing was had on an application for extradition of the defendant to Arizona. The pending superior court case was called to the attention of the municipal court judge, but extradition was granted. The form of the Arizona request for extradition was stamped: "Approved as to form, the Attorney General of the State of California, by Calvin L. Taylor, Deputy Attorney General, dated April 24, 1967."

Following the extradition hearing, defendant was transported to Arizona, where the Arizona court record shows that on May 18, 1967, "upon stipulation examination continued until June 13th at 2:00 p.m.," and bail was set and posted in the amount of $1,500.[2]

In California, the next action after the June 5 issuance of the bench warrant was on September 5, 1967, when counsel for defendant (in defendant's absence) moved for a dismissal of the charges against defendant, claiming lack of due process. This motion was denied.

Although there is some confusion in the reporter's transcript as to the fact of defendant's having gone to Florida,[3] there is no question but that defendant was extradited from Texas to California on or about July 11, 1968.

---

[2]Defendant testified this was not correct, in that his bail and release in Arizona were not until some time between June 16 and June 21.

[3]The judge referred to a communication to the court on December 14, 1967, inferring that defendant was in custody in Florida.

Defendant was permitted to file a supplemental brief in pro. per., though he had able, appointed counsel on appeal. In this brief he recites that following his release on bail in Arizona, he went to Florida. He further states that California instituted extradition proceedings in an effort to have him returned from Florida, and that defendant left the jurisdiction and was finally apprehended in Texas.

On July 17, 1968, the case was again called and continued to July 18, at which time defendant's privately obtained attorney was relieved at defendant's request, and the public defender substituted. On July 24, the public defender was substituted out, and the court appointed private counsel, with defendant's approval, to represent him.

The case was then continued to September 16, 1968, with defendant acquiescing in waiving time. On that date, defendant filed another motion to dismiss, and after a further waiver of time by defendant, the trial was set for November 18, 1968, and the hearing on the motion was set for October 3. Ultimately, the motion was heard and denied on October 11, 1968. After three more continuances, accompanied by the necessary waivers of time, trial was had on January 17, 1969, and the defendant was convicted. Time for probation and sentence was ultimately set for February 17, 1969. At that time defendant was committed for diagnostic purposes, pursuant to Penal Code section 1203.03. On April 29, 1969, probation was denied and defendant was sentenced on each count to the state prison for the term prescribed by law, the sentences to run concurrently.

■ In his pro. per. brief, the defendant raises the contention that he was denied due process by the state action permitting his extradition to Arizona when the case was pending in California and this action denied his right to a speedy trial. There is no merit to this contention. There was a hearing held in accordance with Penal Code section 1550.1.[4] There was also evidence produced at the hearing held on October 11, 1968, on defendant's motion to dismiss, based on this same contention, to the effect that the extradition was desired by both defendant and his then counsel. The defendant has included as an appendix to his brief what appears to be a transcript of the May 4 hearing on the extradition. Assuming the authenticity of the appendix as a true transcript, it establishes that a request for a continuance of that hearing, on behalf of defendant, was

---

[4]Penal Code, section 1550.1: "No person arrested upon such warrant shall be delivered over to the agent of the executive authority demanding him unless he first is taken forthwith before a magistrate, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. If the accused or his counsel desires to test the legality of the arrest, the magistrate shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. If the writ is denied or the accused is remanded to custody, and probable cause appears for an application for a writ of habeas corpus to another court, or justice or judge thereof, the order denying the writ or remanding the accused shall fix a reasonable time within which the accused may again apply for a writ of habeas corpus. When an application is made for a writ of habeas corpus as contemplated by this section, a copy of the application shall be served as provided in Section 1475 upon the district attorney of the county in which the accused is in custody, and upon the agent of the demanding state."

withdrawn, and the clear implication of acquiescence of the defense in the granting of extradition appears of record. While it may be true that the defendant did not sign a waiver of extradition, neither was there opposition to the extradition already ordered by the Governor.[5] Penal Code section 1553.1 provides: "If a criminal prosecution has been instituted against such person under the laws of this State and is still pending, the Governor, with the consent of the Attorney General, may surrender him on demand of the executive authority of another State or hold him until he has been tried and discharged or convicted and served his sentence in this State."

The choice as to which of the two prosecutions shall proceed first does not lie in the whim of the defendant. The fact that California granted extradition to permit the defendant to be tried first on the older of the charges against him seems to aid in preserving defendant's right to speedy trial. The fact that defendant chose to absent himself for an extended period of time from the trials by posting bail in Arizona and then becoming a fugitive, requiring his custodial return to California, may not be urged as contributing to any violation of due process.

■ Defendant also contends that due process was violated in that California courts were without jurisdiction to issue a fugitive warrant. Permitting defendant to be extradited to Arizona did not amount to a waiver of this state's jurisdiction to try him. The old case of *In re Whittington,* 34 Cal.App. 344, 347 [167 P. 404] arrived at a different conclusion upon facts nearly identical with those before us: ". . . But in this case the prisoner did not leave the state of Texas by any voluntary act of his own. He was taken out of the state against his will and under compulsory process at a time when the state of Texas had him in custody with full right and power to prosecute him for the offense for which it now seeks to have him returned. Not only may it be said that he is not a fugitive because he did not voluntarily leave that state, but because also the state of Texas voluntarily relinquished the jurisdiction of its courts over his person and waived its right to thereafter have him brought back from the California jurisdiction to answer for the same offense." This case has been criticized as "clearly contrary to the weight of authority." (*In re Fedder* (1956) 143 Cal.App.2d 103, 111 [299 P.2d 881], citing cases.)[6] The holding in *Whittington* was legislatively emasculated in 1937 by the adoption of section 1555.2 of the Penal Code: "Nothing in this chapter

---

[5]The last few lines of the appendix "transcript" clearly indicate that the judge concluded that the hearing in accordance with Penal Code section 1550.1 was no longer necessary in the light of the withdrawal of any objection or other desire to test the legality of the arrest, and hence ordered the proceedings "dismissed."

[6]For a scholarly analysis of the extradition problem, see Justice Walter Fourt's opinion in *In re Fedder.*

shall be deemed to constitute a waiver by this State of its right, power or privilege to try any demanded person for crime committed within this State, or of its right, power or privilege to regain custody of such person by extradition proceedings or otherwise for the purpose of trial, sentence or punishment for any crime committed within this State; nor shall any proceedings had under this chapter which result in, or fail to result in, extradition be deemed a waiver by this State of any of its rights, privileges or jurisdiction in any manner whatsoever." It was not until 1966, however, that our Supreme Court in *In re Patterson,* 64 Cal.2d 357, 363 [49 Cal.Rptr. 801, 411 P.2d 897] specifically disapproved the *Whittington* case.[7] *Patterson* concluded "that a waiver of jurisdiction should be found only in those cases in which the record contains affirmative evidence that the waiver was intentional." As in *Patterson,* we conclude that "the present case would manifest no such intent."

The first contention made on behalf of the defendant by court-appointed counsel is that defendant did not waive the right to trial by jury. Unfortunately, a supplemental transcript setting forth the proceedings held on January 2, 1969 had not been filed with the court at the time the opening brief on appeal was filed (December 24, 1969). This supplemental transcript establishes that a proper waiver by defendant of a jury trial was entered in the record.

The second contention is that there is not sufficient evidence to support defendant's conviction on count XII. This contention is based on counsel's belief that count XII is not related to the victim, Mrs. Bradbrook, and he relies upon a portion of the grand jury transcript wherein the deputy district attorney referred to count XII as relating to a "Mrs. Bradley." The indictment, however, makes no reference to the name of the victim. The purpose of the indictment is to inform the accused of the charge which he must meet at the trial. (*People* v. *Mason,* 184 Cal.App.2d 317, 353-356 [7 Cal.Rptr. 627].) Count XII charged defendant with attempted grand theft, occurring on or about February 9, 1967. There was ample evidence in the transcript to establish that the attempted larceny of Mrs. Bradbrook occurred on or about that date. At the time of trial, all parties treated the count as involving the incident relating to Mrs. Bradbrook, and defendant in his testimony disclaimed his involvement; no consideration appears to have been given to any charge relating to a "Mrs. Bradley." If any error in fact occurred (which we do not discern), it could readily have been prevented by a simple objection from defendant (*People* v. *Francis,* 71 Cal.2d 66, 74-75 [75

---

[7]Reference to footnote 70, page 448 in 35 C.J.S., § 21 (b), Extradition, should be disregarded so far as California is concerned.

Cal.Rptr. 199, 450 P.2d 591]) and a specific amendment to the indictment made in lieu of an implied amendment, which occurs when proceedings proceed on the assumption that the charge is correct in every detail. (*People* v. *Powell,* 236 Cal.App.2d 884 [46 Cal.Rptr. 417].)

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.