[No. B044806. Second Dist., Div. Four. Apr. 12, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
JULIO CESTERO PEREZ, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Arnold T. Guminski and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Michael J. Udovic, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**GEORGE, J.**—More than eight and a half years elapsed between the filing of an indictment, charging defendant with murder and conspiracy to

commit murder, and defendant's arrest. During the intervening period, defendant was a fugitive living in Venezuela. The People appeal from an order dismissing the charges on the ground defendant was denied a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. For the reasons that follow, we conclude defendant waived his right to speedy trial and reverse the order of dismissal.

## PROCEDURAL AND FACTUAL HISTORY

On September 13, 1978, an indictment was filed charging defendant and codefendants Jaime Vila and David Lopez with the murders of Ralph Dennis and Joni Scruggs (Pen. Code, § 187, subd. (a)) and conspiracy to commit murder (Pen. Code, § 182, subd. (a)(1)). Over eight and a half years later, on April 27, 1987, defendant was arrested in Venezuela, was expelled from that country and flown to the United States, and appeared in superior court on May 22, 1987.

On October 21, 1988, defendant filed a written motion to dismiss the present charges, asserting he had been denied a speedy trial. In a declaration attached to the motion, defendant stated that on September 19, 1978, six days after the indictment in the present case was filed, he was arrested on unrelated federal narcotics charges by agents of the Drug Enforcement Administration at his home in Puerto Rico. He appeared before the United States District Court in Puerto Rico that day, was released on his own recognizance, and was ordered to return to court the next day. In defendant's words: "I did not return to court. After hiding out in Puerto Rico for a few days I travelled to Venezuela . . . . [¶]Shortly after arriving in Venezuela, I wrote to my wife in Puerto Rico. I used a false name and return address on the envelope . . . ."

Defendant's declaration further states that on April 27, 1987, he was arrested by Venezuelan police officers at the American Embassy while attempting to renew his passport, and that three days later, he was driven to the airport, released to the custody of the United States Marshal's Service, and flown to Miami, Florida.

At a hearing held January 13, 1989, on defendant's motion to dismiss, Special Agent Saverio Weidel of the United States Drug Enforcement Administration testified that on September 18, 1978, he arrested defendant in San Juan, Puerto Rico, pursuant to an arrest warrant arising from federal narcotics charges. Defendant appeared before a federal district court judge

and was arraigned that day.[1] During a bail hearing, Agent Weidel informed the court, in defendant's presence, "that there were charges to be filed, very serious charges, by the State of California" against defendant. At the request of a Los Angeles police detective, Agent Weidel did not disclose the exact nature of the charges in the present case.[2] Over the objection of Agent Weidel, defendant was released on his own recognizance and ordered to appear the following morning for a continuation of the bail hearing. Defendant failed to appear.

A declaration by defense counsel, attached to the motion to dismiss, states that on December 8, 1978, an arrest warrant issued in the present case was entered into a national computer system.

Barbara Moore, the chief of extradition services for the Los Angeles District Attorney's Office, testified at length concerning her efforts, which began the day after the indictment was filed, to secure defendant's presence for trial. On that date, September 14, 1978, defendant's whereabouts were unknown. On December 19, 1978, Ms. Moore's office contacted the United States Attorney's Office, requesting it seek "an unlawful flight warrant." Such a warrant was issued on December 21, 1978.

Three years later, on December 21, 1981, the district attorney's office first learned of a "possible address [for defendant] in Venezuela." Ms. Moore decided to attempt to have defendant deported from Venezuela rather than seek extradition, which entailed a more lengthy and complicated process. During the next two years, with that objective, Ms. Moore sent letters and placed telephone calls to the appropriate departments of the federal government. On September 14, 1984, a federal official telephoned Ms. Moore and informed her that the Venezuelan authorities would not confirm the presence of defendant for the purpose of deportation, and that they desired a formal request for extradition.

In October or November of 1984, the district attorney's office decided to seek formal extradition of defendant but was hampered by its lack of knowledge of defendant's exact location. Although an agent of the Federal Bureau of Investigation had stated in a telephone conversation with Ms. Moore on October 22, 1984, that he had located defendant, the agent never provided such information to the district attorney's office. After several additional inquiries, officials of the Federal Bureau of Investigation stated on February

---

[1] Defendant and Agent Weidel disagree whether this arrest and arraignment took place on September 18 or 19, 1978, but the discrepancy is not material to any issue on appeal.

[2] Los Angeles Police Detective Henry Petroski, Jr., testified he did not want the nature of the charges disclosed because "we had two other suspects outstanding, and we wanted to find those people before it all came out that everybody had a warrant against them."

6, 1985, and again on April 22, 1985, that defendant's exact location was unknown.

On April 27, 1987, Ms. Moore learned that defendant had been arrested that day in Venezuela. Defendant was expelled from Venezuela and transported to Miami, Florida, three days later. On May 13, 1987, defendant waived extradition and, on May 20, 1987, was flown to Los Angeles.

Special Agent Robert Candelaria testified he interviewed defendant in Venezuela after defendant was arrested. Defendant stated "that he didn't want to come to the United States because he had killed two people in California . . . and he was afraid he was going to be prosecuted on that."

In ruling on defendant's motion to dismiss, the superior court noted that defendant had made no showing he had suffered actual prejudice from the delay. The court agreed with the People that defendant had "fled the jurisdiction" but ruled that defendant's failure to assert his right to a speedy trial could not "be held against him" because there had been "a conscious decision on the part of the People not to inform [defendant] that there were charges pending against him."

Turning to the reasons for the delay, the court observed that "it took several years from the time that [defendant]'s whereabouts were established in Venezuela until he was arrested and brought back here." The court stated that the government's failure to allocate additional resources to securing defendant's return from Venezuela "balances out with [defendant's] having absented himself from the jurisdiction." The court found it "clear that the government has the burden to deal in an expeditious fashion with these cases." Accordingly, the court granted defendant's motion to dismiss.

## DISCUSSION

### *By Fleeing the Jurisdiction to Avoid Prosecution, and Remaining at Large More Than Eight Years, Defendant Waived His Right to a Speedy Trial*

■ The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."[3] ■ "[T]he right to a speedy trial is

---

[3] The California Supreme Court held in *Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 262 [219 Cal.Rptr. 420, 707 P.2d 793] "that the Sixth Amendment right to speedy trial attaches . . . with the filing of the accusatory pleading . . . or arrest, whichever is first. [Fn. omitted.]" In dissent, Chief Justice Lucas noted that the United States Supreme Court "has never extended speedy trial rights to an accused before that court prior to his arrest [fn. omitted],

'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." (*Barker* v. *Wingo* (1972) 407 U.S. 514, 515 [33 L.Ed.2d 101, 108, 92 S.Ct. 2182], fn. and citations omitted.) **(3)** "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." (*Id.*, at p. 527 [33 L.Ed.2d at p. 115] fns. omitted.) "[T]he primary burden [is] on the courts and the prosecutors to assure that cases are brought to trial." (*Id.* at p. 529 [33 L.Ed.2d at p. 116].) In stating this rule, however, the United States Supreme Court was careful to observe: "*We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . . .*" (*Ibid.* [33 L.Ed.2d at p. 116], italics added.)

■ It has long been recognized that a convicted defendant who becomes a fugitive from justice forfeits the right to appeal that conviction. (*Molinaro* v. *New Jersey* (1970) 396 U.S. 365, 366 [24 L.Ed.2d 586, 90 S.Ct. 498]; *Smith* v. *United States* (1876) 94 U.S. 97, 97-98 [24 L.Ed. 32, 32]; *People* v. *Redinger* (1880) 55 Cal. 290, 298; *People* v. *Brych* (1988) 203 Cal.App.3d 1068, 1077 [250 Cal.Rptr. 402].) ■ A defendant who becomes a fugitive by failing to appear for trial on felony charges that later are dismissed cannot invoke the statute of limitations to bar the refiling of those charges. (*People* v. *Abayhan* (1984) 161 Cal.App.3d 324, 332-333 [207 Cal.Rptr. 607].) ■ Sanctions for negligent destruction of evidence may not be sought where evidence was lost while the defendant was a fugitive for a lengthy period. (*People* v. *Lawrence* (1985) 172 Cal.App.3d 1069, 1078 [218 Cal.Rptr. 345].) ■ And delay while the defendant is a fugitive "may not be urged as contributing to any violation of due process." (*People* v. *Albin* (1970) 9 Cal.App.3d 31, 36 [88 Cal.Rptr. 422].) ■ ■ ■ ■ Accordingly, we conclude that a defendant who flees the jurisdiction of a court for the purpose of avoiding prosecution waives the right to a speedy trial.[4]

and *United States* v. *Marion* [(1971)] 404 U.S. 307, 320-322 [30 L.Ed.2d 468, 478-480] indicates that the court is not convinced that speedy trial rights should *ever* attach before a suspect is arrested." (*Serna* v. *Superior Court*, *supra*, 40 Cal.3d at p. 271, italics in original.) Despite the persuasive force of Chief Justice Lucas's dissent, we are bound by the holding in *Serna* and conclude the right to a speedy trial attached in the present case upon the filing of the indictment.

[4] We do not hold that all fugitives from justice are foreclosed from raising speedy trial claims, because the term "fugitive" has been defined to include persons who are outside the court's jurisdiction for reasons other than to avoid prosecution. (*Hogan* v. *O'Neill* (1921) 255 U.S. 52, 56 [65 L.Ed. 497, 41 S.Ct. 222, 223]; *United States* v. *Deleon* (7th Cir. 1983) 710 F.2d 1218, 1222, fn. 5.) For example, the definition of the term "fugitive" has been held to include a person who leaves the court's jurisdiction not knowing charges are pending. (*United States* v. *Bagga* (11th Cir. 1986) 782 F.2d 1541, 1545.) We do not hold that a person who leaves the jurisdiction under such circumstances waives the right to a speedy trial.

The Supreme Court in *Barker* v. *Wingo, supra,* 407 U.S. 514, held a delay of well over five years did not deprive the defendant of a speedy trial, because he failed to object to the delay during most of that period. The court stated: "[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." (*Id.,* at p. 536 [33 L.Ed.2d at p. 120].) Certainly the court did not intend to sanction the severe remedy of dismissal of the charges where the defendant had fled the jurisdiction in order to avoid prosecution.

It does not matter that defendant had not been informed of the exact nature of the charges in the present case before he fled to Venezuela. He had been informed the day before he failed to appear in federal court on narcotics charges and left United States territory "that there were charges to be filed, very serious charges, by the State of California" against him. His statement following his arrest "that he didn't want to come to the United States because he had killed two people in California . . . and he was afraid he was going to be prosecuted on that," demonstrates defendant was aware of the nature of the charges and actively sought to avoid prosecution.

In accord with our holding are decisions construing the statutory right to a speedy trial found in Penal Code section 1382. Based on the " 'familiar maxim of jurisprudence that "No man can take advantage of his own wrong," ' " it is well settled that "the constitutional guaranty of a speedy trial and the provisions of section 1382 of the Penal Code adopted in pursuance thereof do not operate in favor of a fugitive from justice." (*In re Gere* (1923) 64 Cal.App. 418, 422-423 [221 P. 689]; *People* v. *Johnson* (1962) 205 Cal.App.2d 831, 836 [23 Cal.Rptr. 608]; *People* v. *Anderson* (1954) 126 Cal.App.2d 702, 704 [272 P.2d 805]; *People* v. *Seeley* (1946) 75 Cal.App.2d 525, 526-527 [171 P.2d 529]; 5 Witkin & Epstein, Cal. Criminal Law (1989) Trial, § 2605, pp. 3122-3123.)

█ Although several decisions of the United States Courts of Appeals state that the Sixth Amendment speedy trial guaranty applies to periods of delay while the defendant is a fugitive, "we are not bound by the decisions of the lower federal courts even on federal questions. However, they are persuasive and entitled to great weight. [Citations.]" (*People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) As we shall explain, our examination of these decisions does not alter our conclusion that a defendant who flees the jurisdiction of a court for the purpose of avoiding prosecution waives his or her right to a speedy trial.

*Rayborn* v. *Scully* (2d Cir. 1988) 858 F.2d 84, involved a delay in bringing the defendant to trial in New York on murder charges. During part of

this period of delay, the defendant actively avoided prosecution on an unrelated homicide charge in Philadelphia and unrelated federal narcotics charges by failing to appear in court. The court concluded that the defendant's "evident lack of serious interest in a speedy prosecution of the charges against him, as shown by his fugitivity, . . . militate[s] against finding that he suffered a deprivation of his sixth amendment right" (*id.*, at p. 89), and that the defendant, "who by any apparent assessment was a bail jumper and an absconderer, must bear the blame for the first four-and-a-half years of delay in this case." (*Id.*, at p. 91.) The court also stated, however: "[W]henever an individual has been officially accused of a crime, not only is the government charged with the burden of bringing the accused swiftly to trial, but it is under an obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution. [Citations.]" (*Id.*, at p. 90.) The cases cited in support of the latter proposition, however, do not so hold.

*Smith* v. *Hooey* (1969) 393 U.S. 374 [21 L.Ed.2d 607, 89 S.Ct. 575] is cited in the opinion in *Rayborn* v. *Scully* for the proposition that the "government has [an] affirmative obligation to locate and apprehend a known suspect." (*Rayborn* v. *Scully, supra,* 858 F.2d 84, 90.) This misstates the holding in *Smith* v. *Hooey* because that decision did not address the government's obligation either to "locate" or "apprehend" a suspect. The defendant in that case was indicted in Harris County, Texas, while he was incarcerated in a federal penitentiary in Kansas. The defendant, by letter, requested a speedy trial, but Texas authorities "took no steps to obtain the [defendant's] appearance" for a period of seven years. (*Smith* v. *Hooey, supra,* 393 U.S. 374, 375 [21 L.Ed.2d at pp. 609-610].) The state conceded that a request for the appearance of a federal prisoner in state court would have been honored. (*Id.*, at p. 380 [21 L.Ed.2d at pp. 612-613].) The Supreme Court held: "Upon the [defendant's] demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." (*Id.*, at p. 383 [21 L.Ed.2d at p. 614].)

The opinion in *Rayborn* v. *Scully* also relies on the decision in *United States* v. *Bagga, supra,* 782 F.2d 1541, but that case did not involve a suspect who had fled prosecution. The defendant in *Bagga,* upon learning of his wife's illness in India, left the United States for India nearly three months before the indictment against him was filed. He remained in India and did not learn of the indictment until three years later. After an additional three years had passed, the defendant returned to the United States and surrendered to the authorities.

Significantly, the court in *Bagga,* in determining whether the defendant had been denied a speedy trial, considered only the period from the filing of

the indictment to the time the defendant learned of the indictment.[5] Because the defendant had not actively avoided prosecution during this period, the decision in *Bagga* does not stand for the proposition stated in *Rayborn* v. *Scully* that the government's delay in apprehending a fugitive who is fleeing prosecution may constitute denial of a speedy trial.

The opinion in *Rayborn* v. *Scully* relies on the decision in *United States* v. *Deleon, supra*, 710 F.2d 1218, but that case also did not involve a defendant who actively sought to avoid prosecution. The defendant in *Deleon* was in the custody of Texas officials when a federal warrant was issued for his arrest[6] and remained "totally unaware of any charges pending against him in this case until his arrest" over three and a half years later. (*Id.* at pp. 1221, 1223.)

The final case cited in *Rayborn* v. *Scully* in support of the proposition that the government's delay in apprehending a fugitive who has fled prosecution may constitute a denial of the right to speedy trial is *U.S.* v. *Diacolios* (2d Cir. 1988) 837 F.2d 79. The defendant in that case was living in Greece when he was indicted on federal tax and mail fraud charges. Through his attorney, defendant entered a plea of not guilty but stated he could not afford to return to the United States. Although the government indicated it would consider paying the defendant's airfare from Greece, the defendant pursued in efforts to be tried *in absentia*. The trial court denied his request and granted the government's motion to have the trial date adjourned indefinitely.

The appellate court noted that the defendant was not subject to extradition under the treaty between the United States and Greece because the defendant was a Greek national, and the United States had a policy not to request the return of Greek nationals by means other than the extradition treaty. Accordingly, the court held the defendant was not denied a speedy trial as long as the government was willing to provide transportation at its expense, if necessary, should the defendant wish to return for trial. (*U.S.* v. *Diacolios, supra*, 837 F.2d 79, 84.)

The holding in *Diacolios*, that the government must offer free transportation for an accused who wishes to return for trial but lacks sufficient

---

[5] The period after the defendant in *Bagga* learned of the indictment was considered only as bearing on whether he adequately had asserted his right to a speedy trial. The court held that the defendant's failure to return to the United States or indicate a desire for a speedy trial after learning of the indictment indicated that "Bagga was a reluctant defendant who was not concerned with a speedy trial." (782 F.2d at p. 1545.)

[6] The court in *Deleon* chose to measure the period of delay from the issuance of the arrest warrant, although recognizing that the federal right to a speedy trial does not attach until the filing of a formal indictment or information, or until the defendant has been arrested. (*United States* v. *Deleon, supra*, 710 F.2d 1218, 1220, fn. 2.)

finances, is not at odds with our conclusion that delay resulting from the government's efforts to apprehend a fugitive suspect who is avoiding prosecution does not constitute a denial of a speedy trial. The distinction is simple. A defendant who wishes to return, but is financially unable to do so, is seeking a speedy trial, whereas a fugitive who flees the jurisdiction of the court for the purpose of avoiding prosecution has demonstrated no interest in obtaining a speedy trial and has waived the right thereto.

Nevertheless, the reasoning employed in the decision in *Diacolios* suggests the result would have been different had the defendant been subject to extradition and the government negligently had delayed his return for trial. In support of this supposition, that delay in securing the return of a fugitive who is avoiding apprehension may constitute a Sixth Amendment violation, the court in *Diacolios* cited two cases. The first, *Smith* v. *Hooey, supra*, 393 U.S. 374, as explained above, does not so hold. The second, *United States* v. *Salzmann* (2d Cir. 1976) 548 F.2d 395, as explained below, expressly declined to reach this issue.

When the defendant in *Salzmann* moved to Israel, his draft board revoked his student deferment, reclassified him I-A, and (after the defendant failed to report for a preinduction physical examination) ordered the defendant to report for induction into the military. The defendant failed to report and, nearly a year and a half later, an indictment was filed. The defendant asserted by letter to an Assistant United States Attorney, as the defendant had done in earlier correspondence, that he could not afford to return to the United States.

The government conceded "that its failure to offer [the defendant] travel funds in the face of his continued avowal of poverty constituted a lack of due diligence under the speedy trial rules, if, indeed, the [defendant] lacked the necessary travel funds." (*United States* v. *Salzmann, supra*, 548 F.2d 395, 399.) The court held that, "in light of this concession," the defendant had been denied a speedy trial. (*Ibid.*) The court further stated: "Having decided that the Government's failure to notify [the defendant] of the availability of funds to finance his return for trial constituted a lack of due diligence, we need not determine whether the United States should have tried to prevail upon Israel to deport him." (548 F.2d at p. 402.)

Another case suggesting denial of a speedy trial may be based upon the government's failure to apprehend a fugitive is *U.S.* v. *Blanco* (2d Cir. 1988) 861 F.2d 773, in which the defendant was living in Colombia when she was indicted but evidenced her knowledge of the charges against her by travelling under a false name and telling a government informant she would not come to the United States because she was "wanted" there. The court,

without discussing whether the defendant had waived her right to a speedy trial, utilized a speedy trial analysis but concluded the defendant "must bear the responsibility for the lengthy delay between her indictment and trial." (*Id.*, at p. 778.) The court stated: "Despite her knowledge of the outstanding indictment, Blanco chose to become a fugitive. . . . [B]efore she was arrested Blanco had no interest in a trial, speedy or otherwise." (861 F.2d at pp. 779-780.) The opinion continues: "Coming from a former fugitive, Blanco's claim that her right to a speedy trial was denied carries almost no weight. As Chief Judge Feinberg wrote in [*United States v.*] *Salzmann* [*supra*, 548 F.2d 395, 404, fn. omitted]: '[¶]A true fugitive, whose location is unknown, or who is successfully resisting government efforts to bring him into the jurisdiction, will not be able to obtain dismissal of an indictment. This is as it should be. Otherwise, the courts would be sanctioning the playing of games by fugitives.'" (861 F.2d at p. 780.)

Finally, *Garcia Montalvo* v. *U.S.* (2d Cir. 1988) 862 F.2d 425, 426, employed a speedy trial analysis where the defendant was incarcerated in Venezuela when he was indicted and, upon his release, "remained in Venezuela as a fugitive." The decision does not discuss, however, whether the defendant was aware of the indictment prior to his arrest or had left the United States for the purpose of avoiding prosecution.

The foregoing analysis demonstrates that those decisions of the federal Courts of Appeals holding or suggesting that a fugitive who actively avoids prosecution is denied a speedy trial if the government does not employ due diligence in attempting to locate and apprehend him, either do so without analysis or rely upon inapposite authority. Accordingly, we find those opinions unpersuasive and decline to follow them.[7] ▆▆▆ Instead, we hold that defendant in the present case waived his right to a speedy trial by fleeing to Venezuela for the purpose of avoiding prosecution.

The conclusion reached by the dissenting opinion, that "[t]he Sixth Amendment rights of the accused cannot be summarily dismissed or deemed waived based solely on the fact that he has fled the jurisdiction" (dis. opn., p. 319), is directly contradicted by the United States Supreme

---

[7]The dissenting opinion's reliance on three additional federal Court of Appeals decisions is misplaced. The defendants in *United States* v. *Mitchell* (11th Cir. 1985) 769 F.2d 1544 and *U.S.* v. *Otero* (7th Cir. 1988) 848 F.2d 835 had not actively avoided prosecution, and thus those decisions are inapposite. The defendant in *U.S.* v. *DeClue* (6th Cir. 1990) 899 F.2d 1465 had attempted to elude apprehension, but the court's decision does not discuss the issue presently before us, namely whether such conduct constitutes a waiver of the right to speedy trial. Instead, the Court of Appeals in *DeClue* employed a speedy-trial analysis in affirming the district court's denial of the defendant's motion to dismiss, concluding that "any negligence on the part of the government in causing the length of the delay is outweighed by defendant's elusiveness, which initially precipitated the delay." (*Id.*, at p. 1470.)

Court's observation that "if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . . ." (*Barker* v. *Wingo, supra,* 407 U.S. 514, 529 [33 L.Ed.2d 101, 116].)

The dissenting opinion disregards this express recognition that the right to a speedy trial may be waived if the delay is attributable to the accused, instead discussing at length the rule announced in *Barker* that "the defendant's assertion of or failure to assert his right to a speedy trial is *one* of the factors to be considered in an inquiry into the deprivation of the right." (*Barker* v. *Wingo, supra,* 407 U.S. 514, 528 [33 L.Ed. 101, 116], italics added.) In doing so, the dissent fails to distinguish between passive "failure to assert [the] right to a speedy trial," which is one of several relevant factors to be considered in a *Barker* v. *Wingo* balancing process, and active flight from the jurisdiction with the intent to avoid prosecution, which constitutes a waiver of the right to a speedy trial under *Barker* v. *Wingo.* The balancing test in *Barker* does not come into play when the defendant has fled the jurisdiction for the purpose of avoiding prosecution. In the situation involving such a fugitive, resort to the balancing process is unwarranted; the fugitive, having done all he or she can do to avoid being brought to justice, cannot then claim that denial of the right to speedy trial resulted from the ensuing delay.

Even were we to hold that defendant had *not* waived his right to a speedy trial, however, we would conclude that he was not denied this right and that the superior court erred in dismissing the present case.

In determining whether a defendant has been denied a speedy trial, four of the factors to be considered are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. [Fn. omitted.]" (*Barker* v. *Wingo, supra,* 407 U.S. 514, 530 [33 L.Ed.2d 101, 117].) In the present case, the length of the delay is sufficient to necessitate consideration of the remaining factors. (*Ibid.* [33 L.Ed.2d 101, 117].) Turning to the second factor, the reason for the delay in this case was the absence of defendant, for which defendant alone was responsible. As discussed above, the prosecution cannot be held accountable for delay caused by defendant's unilateral action in fleeing the jurisdiction in order to avoid prosecution.

Even were we to hold in the present case that, despite defendant's efforts to avoid apprehension, the People were required to make a showing of due diligence to secure defendant's presence for trial, we would conclude the trial court erred in finding that no such showing was made. The efforts of the district attorney's office to obtain defendant's presence for trial began the day after the indictment was filed and continued until defendant was apprehended. Although periods of inactivity of months and even years

occurred during this time, defendant made no showing that additional efforts would have been successful in securing his return. For the first three years, defendant's whereabouts were completely unknown. Although it later was established that defendant was in Venezuela, his exact location never was confirmed.

The decision in *United States* v. *Bagga, supra,* 782 F.2d 1541, 1543, notes that the government could not be faulted for failing to extradite the defendant from India because "the government had no exact address for Bagga, a prerequisite to a request for extradition proceedings."

In *United States* v. *Deleon, supra,* 710 F.2d 1218, 1222, the court stated: "[S]ince Deleon did not allege that the Government was in fact aware of his location or that the Government deliberately delayed in apprehending him, and based on the ten DEA investigative reports which indicate the Government received no reasonable information concerning Deleon's location, we conclude that any delay which occurred was not the result of failure by the Government to make a diligent good faith effort to find Deleon. [Fn. omitted.] Rather, it was the result of Deleon's fugitive status. [Fn. omitted.]"

The court in *Rayborn* v. *Scully, supra,* 858 F.2d 84, 90, observed that "law enforcement officials are not expected to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown."

In *Garcia Montalvo* v. *U.S., supra,* 862 F.2d 425, 426, it was impossible to extradite the defendant from Venezuela, and merely lodging a warrant for the defendant's arrest with Venezuelan authorities was held to constitute due diligence.

The efforts of the district attorney's office to secure defendant's presence for trial far exceed those efforts held sufficient to establish due diligence in the cases discussed above. We conclude the superior court abused its discretion in finding that the People failed to exercise due diligence in attempting to secure defendant's presence for trial.

The third factor to be considered is defendant's assertion of his right to a speedy trial. Defendant made no attempt to assert his right to a speedy trial during the more than eight and a half years he was a fugitive. After his arrest, defendant asserted his right in a timely fashion. As was the situation in *Barker* v. *Wingo, supra,* 407 U.S. 514, 535 [33 L.Ed.2d 101, 119], "the record strongly suggests that while [defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried."

Regarding the fourth factor, defendant conceded in the superior court that he had suffered no actual prejudice from the delay. Although a showing of prejudice "is not a prerequisite to finding a sixth amendment violation [citation], courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice [citations]." (*Rayborn* v. *Scully, supra,* 858 F.2d 84, 94.)

Of the applicable four factors, only the length of the delay supports defendant's assertion that he was denied his right to a speedy trial. The remaining factors all weigh heavily against defendant. The conclusion is inescapable that defendant was not denied his right to a speedy trial and that the superior court erred in dismissing the murder and conspiracy charges against defendant.

### DISPOSITION

The judgment (order of dismissal) is reversed.

Epstein, J., concurred.

**WOODS (A. M.), P. J.,** Dissenting.—Although I agree with the result in this case, I write to express my concern that the rationale upon which the majority's decision is based is in conflict with the rule, announced in *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], that "the defendant's assertion of or failure to assert his right to a speedy trial is *one* of the factors to be considered in an inquiry into the deprivation of the right." (*Id.* at p. 528 [33 L.Ed.2d at p. 116], italics added.) Some of the other factors which "courts *should* assess in determining whether a particular defendant has been deprived of his right" (*id.* at p. 530 [33 L.Ed.2d at p. 117], italics added) include the length of the delay, the reason for the delay, and prejudice to the defendant. (*Ibid.* [33 L.Ed.2d at p. 117].) The factors specified in the *Barker* decision were not intended to be an exhaustive list. Rather, the court sanctioned what it termed an "approach" to an analysis of the problem, *"a balancing test, in which the conduct of both the prosecution and the defendant are weighed."* (*Id.* at p. 530 [33 L.Ed.2d at p. 116], italics added and fn. omitted.)

The People recognized this fact when, in this case, they acknowledged in the trial court that the length of the delay between indictment and arrest was sufficient to require a *Barker* v. *Wingo* analysis. They argued that since the defendant had not demonstrated prejudice from the delay, the primary focus of the balancing process should be on "the conduct of the two parties."

In response to this argument, the trial court balanced the "very strong language in *Barker* v. *Wingo* regarding the responsibility of the People to bring the defendant to trial" with the fact that the defendant, by leaving the jurisdiction and living in a foreign country, obviously "was not anxious to assert his right to a speedy trial[.]" The court found that the reasons for the delay between indictment and arrest[1] included the prosecution's "conscious decision" not to inform defendant that he had been indicted, and the fact that the district attorney's office chose not to allocate additional resources to its office of extradition services, despite its "vastly increasing work load."

The People do not contend in this appeal, and have never contended in this case, that the trial court erred in balancing all of the relevant factors. They contend only that the trial court came to the wrong conclusion in balancing in favor of dismissing this case. In fact, the People reiterate in this appeal that "[s]ince the delay in the instant case was approximately 8 1/2 years, . . . it seems clear that the remaining factors in the *Wingo* analysis must be considered." More importantly, the People do not contend in this appeal and have never contended in this case, that they have no duty to diligently seek to apprehend a person whom they have accused of a crime. Inexplicably, the majority holds that the efforts of law enforcement agents to apprehend an accused, or the lack thereof, are irrelevant to the determination of whether the right to a speedy trial has been denied.

They reach this conclusion, in part, by criticizing as unsupported by authority the statement in *Rayborn* v. *Scully* (2d Cir. 1988) 858 F.2d 84, that "the government . . . is under an obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution. [Citations.]" (*Id.* at p. 90.) The majority's analysis of those appellate opinions, while interesting, does not justify its disregard of the United States Supreme Court's directive in *Barker* v. *Wingo*, to evaluate the conduct of the government and the defendant to determine the extent to which each contributed to the delay.

Federal appellate cases have applied the *Barker* v. *Wingo* criteria in factual situations similar to those before us. For example, in *United States* v. *Mitchell* (11th Cir. 1985) 769 F.2d 1544, an indictment of seven defendants was sealed at the prosecution's request on the ground that three of the defendants had a propensity to flee. Defendant Mitchell learned of the indictment one year and four months later. He moved to dismiss the

---

[1] I do not share the majority's reluctance to follow the decision in *Serna* v. *Superior Court* (1985) 40 Cal.3d 239 [219 Cal.Rptr. 420, 707 P.2d 793], "that the Sixth Amendment right to speedy trial attaches . . . with the filing of the accusatory pleading . . . or arrest, whichever is first." (*Id.* at p. 262, fn. omitted.) Nor do I find Chief Justice Lucas's dissenting opinion to the contrary persuasive.

indictment claiming that it was sealed for an excessive period because the government did not make a diligent, good faith effort to locate and apprehend the seven defendants. The trial court weighed the factors specified in *Barker* v. *Wingo, supra,* 407 U.S. 514, and, upon finding that " 'the government did very little to find the defendants after each of the indictments was filed,' " (*United States* v. *Mitchell, supra,* 769 F.2d at p. 1546) granted the motion. The reviewing court agreed that "although the government agents did make some attempt to find the defendants, they certainly did not allow the search to interfere with their other activities." (*Id.* at p. 1547.) The reviewing court nevertheless vacated the order of dismissal and remanded the matter for further proceedings because it was not clear whether the trial court had considered the issue of prejudice.

In *U.S.* v. *Otero* (7th Cir. 1988) 848 F.2d 835, the government placed its case against the defendant on "fugitive status" nearly two years after charges had been filed. (*Id.* at p. 837.) The defendant was not arrested until more than seven years after the original charge, when he surrendered to authorities. On the day of trial the defendant moved to dismiss the charges against him alleging that the government made little, if any, effort to locate him between his indictment in 1977 and the date when his case was placed on "fugitive status." His motion was denied. The reviewing court affirmed after balancing all *"Barker* factors" (*U.S.* v. *Otero, supra,* 848 F.2d at p. 840), but noted: "Why more than ten years passed between Otero's indictment and trial is not clear from this record. That the case was assigned to the fugitive calendar in 1979 by the district court, however, suggests that the government had not just a missing witness but a missing defendant. As the government points out in its brief, 'arguably, defendant's fugitive status necessitated the delay in bringing him to trial.' But this less-than-forceful assertion neither explains an appearance filed in the district court by a lawyer on Otero's behalf in 1978, nor says anything about the scope of the government's attempts to locate Otero in the two-year period before he was deemed a fugitive. [¶] . . . Absent any direct evidence on this point, we cannot presume anything. [Citation.] In short, this factor weighs in neither the government's nor Otero's favor." (*Id.* at p. 840.) The only authority which the court found it necessary to cite in support of this approach was *Barker* v. *Wingo, supra.* (*U.S.* v. *Otero, supra,* 848 F.2d at p. 840.)

In *U.S.* v. *DeClue* (6th Cir. 1990) 899 F.2d 1465, the IRS began investigating the defendant for income tax evasion in 1979. An indictment and warrant for his arrest were issued against him in 1982. Both the initial investigation and attempts to execute the warrant were thwarted by the defendant who, when confronted, claimed to be someone else, and who used several different return addresses in his correspondence. In 1987, an IRS agent suggested trying to locate the defendant by finding out where his

Social Security checks were being sent. The defendant, who had been receiving Social Security benefits since 1980, was arrested on August 3, 1988, as he retrieved his Social Security check from a post office box held in the name of another person. The trial court denied his motion to dismiss. The reviewing court evaluated the six-year postindictment delay under the holding of *Barker* v. *Wingo, supra*, and concluded that "any negligence on the part of the government in causing the length of the delay [was] outweighed by defendant's elusiveness, which initially precipitated the delay." (*U.S.* v. *DeClue, supra*, 899 F.2d at p. 1470.)

These cases, and those which the majority dismisses as either lacking in analysis or relying upon inapposite authority, all follow the dictate of *Barker* v. *Wingo, supra*, that *all* relevant factors be considered. As the *Barker* court explained: "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." (407 U.S. at p. 533 [33 L.Ed.2d at pp. 118-119], fn. omitted.)

The meaning of this language is clear. The Sixth Amendment rights of the accused cannot be summarily dismissed or deemed waived based solely on the fact that he has fled the jurisdiction. Even when the defendant has made a concerted effort to avoid prosecution, a court must give effect to the holding of *Barker* v. *Wingo* by weighing the conduct of both sides.

The language in *Barker*, quoted by the majority, to wit, "that 'if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine . . . .' (*Barker* v. *Wingo, supra*, 407 U.S. 514, 529.)" does not undermine this conclusion. The *Barker* court, describing the right to speedy trial as "so slippery," (*id*. at p. 522 [33 L.Ed.2d at p. 112]) rejected a rigid approach to any analysis of whether a defendant has been denied this right. Thus the quoted language must be read in the context of the entire opinion which emphasized that the balancing approach "allows the court to exercise a judicial discretion based on the circumstances" and permits the court to attach a different weight to different circumstances. (*Id*. at p. 529 [33 L.Ed.2d at p. 116].)

Where the only circumstance which has caused the delay is the defendant's flight, I agree with the court in *U.S.* v. *Blanco* (2d Cir. 1988) 861 F.2d

773, 780, that the claim of denial of the right to speedy trial carries almost no weight. To say, however, as the majority does, that no other factor need be considered in such cases is to set a dangerous precedent. It requires no great imagination to envision the misuse to which this ruling may be put.[2] The problems inherent in the majority's holding could be avoided by simply following the dictate of the United States Supreme Court.

For this reason I reject the majority's analysis and embrace the balancing approach applied in *Rayborn* v. *Scully, supra*, 858 F.2d 84, 90, *United States* v. *Mitchell, supra*, 769 F.2d 1544, *U.S.* v. *Diacolios* (2d Cir. 1988) 837 F.2d 79, 83, *U.S.* v. *Otero, supra*, 848 F. 2d 835, *U.S.* v. *Blanco, supra*, 861 F.2d 773, 778, *U. S.* v. *DeClue, supra*, 899 F.2d 1465, *United States* v. *Deleon* (7th Cir. 1983) 710 F.2d 1218, 1221, *United States* v. *Salzmann* (2d Cir. 1976) 548 F.2d 395, 402-403, and *United States* v. *Bagga* (11th Cir. 1986) 782 F.2d 1541, 1544, where the conduct of the fleeing defendant was balanced with the prosecution's attempts to apprehend him. No authority other than *Barker* v. *Wingo, supra*, need be cited in support of the balancing approach, and any case which does not implement that approach, including this one, violates its dictate.

Respondent's petition for review by the Supreme Court was denied July 11, 1991. Broussard, J., was of the opinion that the petition should be granted.

---

[2] For example, would a deliberate delay in apprehending a fleeing felon excuse a similar period of delay if the purpose of the delay was to test the prosecution's evidence in the trial of a codefendant? What if the defendant were hiding within the United States? Or if one governmental agency knew the defendant's address and the prosecuting agency didn't ask? Should the seriousness of the charge be considered? The variations are potentially many.